AMERICAN BRIDGE COMPANY, Appellant, v. A. B. FUNK, Iowa Industrial Commissioner, et al., Appellees.

**MASTER AND SERVANT:** Workmen's Compensation Act—Jurisdiction—Review by Certiorari. An affirmative finding by the industrial commissioner, in a proceeding under the Workmen's Compensation Act, that the relation of employer and employee existed, and that the injury for which compensation was sought arose out of and in the course of the employment, will not be set aside in certiorari proceedings as being in excess of jurisdiction, upon the ground that the findings were against the greater weight or preponderance of the evidence.

**COURTS:** Jurisdiction—Definition. Jurisdiction is the power to hear and determine questions of law and fact, and confers the power to decide wrong as well as right.

MASTER AND SERVANT:   Workmen's Compensation Act—Death
3   in Course of Employment. The finding of the industrial commissioner that decedent, although he had left the premises
under order of the foreman, and returned on a personal commission, was under the Workmen's Compensation Act, and still
an employee when killed, *held* not against the undisputed evidence.

*Appeal from Pottawattamie District Court.*—O. D.
WHEELER, Judge.

JULY 7, 1919.

REHEARING DENIED OCTOBER 22, 1919.

CERTIORARI to test the jurisdiction of the industrial
commissioner to award compensation to an employee for
injuries claimed to have been received by him in the course
of his employment. The finding and award of the commissioner was sustained by the court below, and defendant appeals.—*Affirmed.*

*Tinley, Mitchell, Pryor & Ross,* and *Morseman, Maxwell & Crossman,* for appellant.

*Mayne & Green,* for appellees.

STEVENS, J.—One Pettit, on and prior to the date on
which he was fatally injured, was employed by the American Bridge Company as an assistant, or carpenter's helper,
on a new bridge which appellant was erecting for the Union
Pacific Railway Company across the Missouri River between Council Bluffs and Omaha. Shortly after he arrived on the premises on the morning of November 4, 1916,
to go to work, he was struck and run over by a railway
train, and instantly killed. His beneficiary made claim
against appellant, under the Workmen's Compensation Act,
and it was found by the committee of arbitration, before
which a hearing was had upon evidence introduced on both
sides, that claimant was entitled to compensation at the

rate of $9.23 per week for a period of 300 weeks.  The find-ing and award of the arbitration committee was affirmed, upon review, by the industrial commissioner, and appel-lant sued a writ of certiorari out of the district court of Pottawattamie County, alleging, in its petition and a sub-sequent amendment thereto, among other matters:  (a) That the proximate cause of Pettit's injuries was his vol-untary intoxication; and (b) that the injury did not arise out of or in the course of his employment, and that same was inflicted after he had been discharged for the day and had left the premises and returned thereto upon a personal mission, and that, therefore, the industrial commissioner acted illegally and without jurisdiction in affirming the finding and award of the arbitration committee.  No claim was made in the court below that certiorari was not the proper remedy, and, in view of the conclusion reached upon the jurisdictional question presented, we refrain from dis-cussing or passing upon the question of procedure now urged for the first time in this court.

But a single question reviewable upon this appeal is presented for decision, namely:  Was the finding and order of the industrial commissioner illegal, and in excess of his proper jurisdiction?  The jurisdiction and 1. MASTER AND SERVANT: Workmen's Compensation Act: jurisdic-tion: review by certiorari. authority of the industrial commissioner to award compensation to an injured em-ployee is, by the statute creating this tribu-nal, limited to claims for injuries received by an employee in the course of and grow-ing out of his employment.

The contention of counsel for appellant is that the evi-dence upon which the finding and award of the arbitra-tion committee and the order of the commissioner af-firming same are based, shows conclusively, without con-flict or dispute, that Pettit had been discharged by appel-lant, and that he had left the premises in obedience there-

to, before the injury resulting in his death was received by him, and that same occurred after he had returned to the premises upon a personal mission, and consequently did not arise out of and in the course of his employment. The relation of employer and employee admittedly existed between the parties on the morning of the accident, and up to within a few minutes of the time when Pettit was killed. The commissioner manifestly had jurisdiction of the subject-matter and of the parties, and also to determine from the evidence whether the relation of employer and employee existed between them, and also whether the injuries for which compensation was sought arose out of and in the course of the employment. An affirmative finding by the commissioner upon these questions of fact, erroneous only, if at all, because against the greater weight or preponderance of the evidence, clearly could not be set aside in certiorari proceedings, upon the ground that same was illegal or in excess of his jurisdiction. Whether, in any case, a finding by the commissioner upon the evidence before him that the relation of employer and employee existed, and that the injury grew out of and in the course of the employment, could properly be set aside in certiorari proceedings, we need not decide; as we reach the conclusion that the finding and award of the commissioner is not against the undisputed evidence upon which same was based.

Jurisdiction is the power to hear and determine questions of law and fact, and, as was said by the Supreme Court of California, in *Armantage v. Superior Ct.,* 1 Cal. App. 130 (81 Pac. 1003), confers the power to decide wrong, as well as right.

2. COURTS: jurisdiction: definition.

The jurisdiction conferred by the statutes of this state upon the industrial commissioner is limited to "matters relating to employers' liability for personal injury sustained by employees, fixing compensation therefor, securing payment thereof," etc.

But his authority in matters coming within his jurisdiction necessarily involves the right to decide all questions properly arising out of the controversy before him.

The commissioner may well have found, from the evidence offered upon the question of Pettit's intoxication, that he had been drinking, and was to some extent under the influence of liquor, but that same was not the proximate cause of his injury.

3. MASTER AND SERVANT: Workmen's Compensation Act: death in course of employment.

The commissioner found, upon the other questions of fact, that Pettit was slightly deaf; that the evidence failed to show affirmatively that he heard the foreman, when he first spoke to him upon the subject, tell him he had better go home and stay until Monday morning and sober up; and that he did not realize or understand, before he left the bridge with Morgan, whose hand had been badly bruised by a heavy block of wood carelessly dropped by Pettit, or until after his return, that he was discharged for the day. This finding has some support in the evidence, whether by the greater weight thereof is a question we cannot determine in this proceeding. The evidence is undisputed that Morgan, a fellow employee, with whom Pettit worked as an assistant or helper, told him, when he began work, that "he was not fit to work," and that Pettit replied, "Morgan, I am all right," and went to work; that Beavers, an assistant foreman, observing that Pettit had dropped a block, bruising Morgan's finger, asked the latter why "he did not send Pettit in, if he thought he was not fit to work;" and that the foreman told Pettit that he had better go home and stay until Monday morning: but it does not appear that the latter made any response to this statement. He left the premises with Morgan, who went a short distance from the bridge, to have his fingers dressed, and returned with him, and attempted to resume work. The foreman, however, seeing him pick up one of the heavy

blocks of wood which he had been carrying earlier in the morning, peremptorily ordered him "to go home and sober up." Pettit commenced work on the morning in question about eight o'clock, and was killed something like a half hour later. It is the claim of counsel for appellant that, when he left the bridge in company with Morgan, it was in obedience to the order of the foreman discharging him for the day, and that he returned to inquire whether he was finally discharged, and that, therefore, his injuries were received after his employment had terminated, and after he had not only been allowed a reasonable time in which to leave, but after he had, in fact, left the premises. The record does not show conclusively that deceased left the premises with Morgan because he had been discharged, or that he may not have gone with Morgan on account of his injuries. It may be that the finding of the commissioner is not supported by the greater weight or preponderance of the evidence; but we cannot say, upon the record before us, that it is against the undisputed evidence, and proper inferences to be drawn therefrom.

It is our conclusion, therefore, that the commissioner did not act illegally or without jurisdiction in affirming the award of the arbitration committee, and that no ground for reversal exists. The finding and judgment of the court below is, therefore,—*Affirmed.*

LADD, C. J., WEAVER and GAYNOR, JJ., concur.